Good morning, Illinois Appellate Court. First District Court is now in session. The Second Division. The Honorable Justice Nathaniel House presiding. Case number 22-0938. Jacqueline Burdi and Nicole McCurdy as successor trustee of the Christian Pearson Trust versus Judith McCurdy. Good morning. My name is Nathaniel House. I'm a judge of the Illinois Appellate Court and presiding over this case with me today are Justices Margaret McBride and Cynthia Cobb. We're going to proceed as follows remotely. We're going to allow each party intern to have 10 minutes of uninterrupted presentation and that each party will be given questions after their presentation. We normally do not interrupt during that 10 minute presentation unless we want to redirect you to a subject that we think is especially important. With the parties who are going to make a presentation today, please state their names for the record and the party they represent. Beginning with the appellate. I can't hear you. I can't hear you. What's that phone doing? Is that your phone? That's another party, Justice. Okay. You're wasting time because I can't hear you. Can the court hear me? Yes. Yes. Thank you, Your Honors. Mr. Ruda. Do you want to adjourn for 10 minutes and see if he can straighten out his technical issues? I'll just have him log off, Justice, and then try to log back in. So just stand by. Okay. All right. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you.    Thank you.  Thank you.  Thank you. Okay. Thank you. Thank you. Thank you. Who represents the epali. I'm sorry, please state your name. Mister dog. Thank you Eric dark and your I see door can I represent epali Judy McCurdy. Okay. Do we have any questions about how we going to proceed today, then your honor. Okay, very well then, Mr. Ruida you may proceed when you're ready. Thank you, your honor. I essentially will offer two lines of analysis and in both lines of analysis. I believe the appellate appellant should prevail. But first, I'd like to just get some facts down that are either uncontested or uncontroverted. The first fact is that plaintiff did file a currently pending will contest within the six month limitation period. Secondly, plaintiff did file an interference with expectancy tort with its first amended petition in May 18, 2018. But that was withdrawn. And the reason was, is that basically what we knew back in May 18, 2018, it was determined that full compensation could be had through a simple will contest. So that's interference with expectancy tort was withdrawn. We had no knowledge and there has been no facts presented that we that that the appellant had any knowledge of interviews contract interviews statements. Anyways, forward on August 20th, 2019 was when the first time the appellant discovered suspicious interviews transfers from the decedent to the defendant. And plaintiff filed related torts claims on those on November 4th, 2019. And it was because of this late discovery that plaintiff never had the opportunity to file these tort claims. In this in this within the six month period, and there's no controverting evidence whatsoever for any of these statements. So, basically, with regards to the question in this case, does the probate six month limitation period apply to bar plaintiff's torts claim? Your Honor, the answer is no. And the first district has already confronted this issue in a certified question. And I'll paraphrase in the case that Lucille V. Rao, and I'll paraphrase paraphrase that certified question. Does the six month limitation period for bringing a contest to the validity of a trust apply to a tort action for intentional interference with an expectancy? And the answer is no. And the Rao issued a two step analysis for that. And the first step, I think, is the most important one. And that is the general rule is that the probate act only applies to petitions and not tort action. The exception to the general rule are the Robinson factors. That's Robinson versus First State Bank. Robinson is the exception to the general rule. So, some of the Robinson factors at issue in Rao were, was the trust contest available to the litigant? Was he aware of his legacy? Was there an opportunity to contest the trust and to obtain complete relief? Did the plaintiff choose not to file a trust contest? For example, did he have an agreement or a settlement and abandoned his claim? None of those facts, the Robinson factors were present in that case. Similarly, none of those types of facts are present in our case. In the present case, plaintiff never had the opportunity to file the tort claims within the probate six month period. Because inter vivos transfers were discovered over a year later. After the expiration of April 6, 2018 deadline, that's the six month probate deadline. But on another, on another front, when reviewing this case law, I believe you never, ever really have to confront Robinson exception to the general rule. If you don't file, or I should say, if you file a will contest within the six month period, unlike Robinson, unlike the Ellis case, unlike the Bjork case, unlike the Rao case, we have filed a will contest. So, if a will contest is in place, then the concerns of Robinson, in our opinion, are nonexistent. Robinson basically states that if you have a validated will in place, courts that come in after the six month period are barred. Because that can constitute a collateral attack on the will, or constitute some sort of circumvention of probate jurisdiction. Those problems are not present in the present case. Because we have a valid will in place. Is my time minutes up? Okay. You have a couple minutes. You don't have to use it. Okay. So, in our case, justices, in our case, we did file a will contest. None of the problems or the policy concerns of Robinson are at all present. So, the general rule should apply that tort claims are governed by 13-205 of the general rules of civil procedure. And we should be allowed to continue counts one, two, and four of the second amended complaint. I'm ready to answer questions, justices. All right. Do we have any questions? I have a couple. You just said that you are contesting counts one, two, and four. Right? Correct. All right. Now, count four involves Nicole McCurdy. It did involve her as an individual. Is that correct? Yes. All right. You didn't timely file a notice of appeal. And, in fact, the motion to add her was denied. Did you hear me? Actually, I did not. I know it was something about. You kind of broke up. Did anyone else hear me? Was it broken up? Yeah. Oh. Well, I guess my internet is a little unstable. I'll try to. Can you hear me now? Is it still scratchy? I can hear you now. Are the justices able to hear me? Yeah, but you do. You break up. Okay. You come in and out. Okay. Well, I may. I may try to move. I may try to move. Oh, now you for my question to you, Mr. Reed is. There is no account for. I'm going to move the. I'll have a minute. If you will. Okay. I was not able to hear the her question. And maybe if she submits it in writing or something, we can do something about that. Now, I'm going to try it at this. Any better. Yes. Initially. Yeah, it is a little better. Okay. My only question is, is that. Nicole Purdy. I may have misstated the last name. She did not file a timely notice of appeal as an individual. And you're, you're, you're insisting that you're appealing count for. I agree. So, we don't have count for before us. Is that. I mean, do you agree with that or not? I absolutely agree. And I am sorry. Justices. That was an oversight by, by myself. You are correct. All right. That sets really all I have. Okay. Justice. Kyle. Any questions? No, I have none. Thank you. I got one question and maybe Mr. Dorky can get to it when he gets his turn. You know, these cases talk about, we don't want to rock the boat. If there has been no will contest file, because we don't want to upset. Wills the finality of wheels. But here we have a case where it's not really. File. I mean, final. I mean, this will is admitted to probate, but it's not final. In other words, whatever provision of the will, and there's been no distribution and therefore we're not really upsetting the status quo of parties. So are we really talking about whether or not a will contest was filed, but whether or not. A wheel was. Admitted and it's uncontested and the probe proceeds of an estate distributed. When we talking about prohibiting this tort case. What is it? Okay. Well, if I understood the question, Robinson itself, limits itself to cases where a, a will has become validated. So you were right. Yeah. Your honor. And in our case. A will has not become validated because it's currently in dispute. It's being contested. So the policies underlying. Underlying the Robinson case of a smooth transition of property through the probate courts and, and things of that nature are not disturbed whatsoever by our case, because a valid will is not in place. If that answered your question. Yeah. Right. It did. Does that go to your state, to the standing issue? Yeah. Well, we have standing under, under the probate act as heirs to a previous will. And then we also have standing in terms of the tort case, because plaintiffs have standing to file, you know, file a case against somebody who's injured them. So under either theory, we have a standing or honor justice. Any other questions? No. Okay. All right. Very well then Mr. Dorkin you may proceed when you're ready. Thank you, your honors. And I will address your questions as, as they arise in my presentation. The first thing council started with things that were undisputed. I would note that it's undisputed. They've alleged the discovery in August of 2019. I don't agree that it's undisputed that they did, but for purposes of this motion and our procedural posture, it is an undisputed presumed fact in light of the motion to dismiss. The other thing council said is the reason for the withdrawal of the original tortious interference. That's not in the record and council saying it now for the first time, I don't believe is appropriate. The time to put that in the record was when they were asked by the trial court. And I would point this court to the record record page 23 record page 24 and record page 25 where the trial court specifically asked council, did you file a prior tortious interference claim? And council's answer was not, Oh, we did, but we withdrew it because we had sufficient relief. His answer was no, we didn't. In three different places council said we did not file the tortious interference. Ultimately they had to come back and correct the record. But what was presented to the trial court was not the explanation. You were provided that, Oh, don't worry. We withdrew that tortious interference because we had this valid reason, their reaction. And what they told the trial court when dismissing this case is we didn't file one. So those are the two things I want to start. And then I will come back to the row Lucio case, because I have a very different reading of it in one that in some sense addresses justice houses question as well. I think we, we need to look at Bjork the 2013 Illinois Supreme court case that summarizes and distills Robinson from 1983 and Ellis from 2010 Bjork involves a very different and specific type of tortious interference that I'll discuss in a moment. But if the court looks at paragraph 32 of Bjork, the first step in the analysis is does the tortious interference claim require the revocation of the will? And specifically the language from Bjork is unlike the tort claims in Robinson and Ellis Bjork's tort claim does not seek or require an invalidation of Dama's will here. And it gets to the standing issue. And this is sort of interwoven and I'll do it together. They do not have an injury right now to proceed with the tortious interference claim. The current will does not leave them anything. They are not legatees as such the money that was in the estate, were it not distributed would have been in the estate and would have gone to the current legatees, not to them. So they do not have standing in order for them to have an expectancy interest that expectancy interest arises out of a prior will. So following the first step of the Bjork analysis, does this particular tort claim require the revocation of this particular will? And one of the things, and I will confess to this, your honors, that I find all of the tortious interference cases, very difficult to harmonize in all the different fact patterns. But what I think is clear from all of them, and Ellis makes this point, the facts of the particular cases matter, the particular tort matters, the particular will matters. So to look at the Bjork tort, that the claim in Bjork was the plaintiff saying, I was supposed to be a POD designation on a particular account that went to somebody else. That doesn't implicate the will at all, because the POD designation operates out payment on death, my apologies, operates outside of probate. So the Bjork case never, because of the facts of its case, never implicated the revocation of a will. In this case, in order for the legatees to have standing, in other words, or that's the standing analysis, the tortious interference analysis is in order for them to have an expectancy. In fact, if you look at the Lucio case in paragraph seven of that case, the court notes that the beneficiary plaintiffs were removed from, they took, they did not take under the trust under the final amendment to the trust. So the court says negative, the six months doesn't apply, but with qualification and the qualification, which is later in the case, paragraph 33 is we're remanding to see if you timely filed or had a will contest available to you or the tort contest available to you. So it is very particularized to the facts. So this case is much like Lucio. Whereas the next analysis then, which is what Lucio sent back to the trial court is, did you forego a timely will contest that's Robinson, or were you prevented from a timely will contest that's Ellis? So we look at the facts of this case. Were they, did they forego a will contest? No. Were they prevented? No. And how do I know that? Because they filed one. So the notion that at the time they filed a will contest, they timely filed a tortious interference claim. I would not argue that. It was verified by affidavit. The record does not show why they withdrew it. They simply withdrew it and abandon it. That's a fact that the trial court relied on in his order and amended order. And at no point did the plaintiffs come back into the trial court and say, wait a minute, your reasoning is wrong. Let us correct the record as to why we abandoned that. We thought this with a verified pleading, not counsel saying, Oh, we thought we could get enough relief. The time to say that and the time to make the record for this court was when we were in front of the trial court. So from our perspective, this particular tortuous interference claim requires the revocation of the will. And because it requires the revocation of the will, and because they weren't prevented from filing a will contest, they had six months. They did not file this claim within six months. That they chose to do it in law division is their choice. They are the masters of their complaint. They filed it where they filed it. They argued what they argued in front of the trial court. Were the court to reverse, we would ask that the court reverse with direction to stay it until they can prevent injury. So to get to your question, justice house, the statute says within six months of probate to the extent that different cases have used policy implications to carve out exceptions. I don't think here an exception is warranted, even if the will contest is still pending, because then I think the exception would swallow the rule. And so long as the will contest is going three, four or five years, someone there's nothing to say only the first year after the will contest is pending the second year. Cause I have, I won't put it outside of the record. There are cases I'm sure the court is aware of where will contests have pended for more than a year, two years, three years. And I don't think the public policy would envision a tortuous interference claim that long after the will has been put into probate. For those reasons, your Honor, I ask that you affirm the count one and count two dismissal with prejudice or in the alternative where the court to consider reversal order reversal with a stay pending establishment of standing with a successful will contest. Thank you. All right. Thank you. Do we have any questions? I do. So there's a will contest pending. That is correct, your Honor. And these plaintiffs are the ones that are part of that contest. That is correct, your Honor, because they have an interest in the prior will. Yes. But you're saying they don't have standing in the other case? No, they have standing in the other case. But they don't have standing in the will case, even though they're the ones contesting it? No, they have standing in the will case. They have standing to challenge the will because their legatee is under a prior will. All right. And one of your points is that that has to be decided. Therefore, you can't file a tortious interference. I think the answer is you can file a timely one if you have standing. And then I think I would answer your question this way. I think the proper course would be to file the tortious interference and it gets stayed. You file within the six months and it gets stayed. If they lose the will contest, the tortious interference goes away because they don't have an expectancy interest. That's what I think should have happened. That's what I think they started to do, but they abandoned that. All right. Well, you say they started to do that with this tortious interference count originally. But what my question is, the judge said they had knowledge of inter vivos transfers. Where in the record is there any evidence that these plaintiffs, had knowledge of the inter vivos transfers that they are alleging diminished or actually interfered with their expectancy? I think what the court's position was, is they asserted a tortious interference claim and the court asserted that that was evidence of their awareness and they did not disavow him of that. That would, that would be, and I would say to you, I'm asking you, where is the evidence? Not conclusions, not speculations, not guessing. What do you point to for the court's conclusion that these plaintiffs were aware within the six month timeframe that the allegations, and that's all they are. We don't take them for anything more. There's allegations going back and forth on both sides, but the allegations are that they became aware of inter vivos transfers that interfered with their rights. Where in this record, is there any, any evidence whatsoever that they had knowledge at the time within the six months, their allegations are absolutely opposite of that. And we're accepting them as true at this time. The court, I guess, my answer to you is the tortious interference claim that they had on file. You don't, but, but, but again, we don't have that in front of us. Their allegations are now that they discovered this in discovery. So if there is, if you can't explain to me how the judge reached a conclusion about knowledge, then we accept the allegations that through discovery, they became aware of inter vivos transfers that resulted in an interference, a tortious interference. So I guess your, your answer is, I don't know what your answer is. So is your answer simply that because they previously filed such a claim and there's a basis upon which we should conclude knowledge? Well, I would say it this way. There are numerous possible instances of tortious interference that may or may not exist. And they pled generically that there was tortious interference. At some point, if they wanted to relate back to an existing tortious interference claim, when they discovered more, that would be proper. But I think what the trial court said is you were on notice of being tortiously interfered with. If you would, if they had gone forward with that claim and respectfully, your honor, I don't know because they haven't told me what they think those transactions were or what they thought the tortious interference was until just today. But I think what the trial court was saying is they were aware of some tortuous interference then. And by abandoning that claim, essentially they don't get to relate these back, which is what they'd like to do. So I don't know that there's any evidence in the record of these specific transactions. And I'm not saying there is, but I think what the court is saying is they asserted a tort of a specific type and they abandoned that. And had they left that tort on file, they would not have this problem. And I think what he's saying, you were aware of some tortious interference because you filed a verified pleading. And because you, so that's what I take the trial court to have done. And that's the basis of our argument. It is not to the courts directly to the court's question that they knew of these two specific transactions when they filed the will contest. I am not suggesting that. And I don't think the trial court did. Well, then let me ask you this. If there were, and I'm not saying there were, if there were inter vivos transfers, a will contest can never, ever make up those losses. Can it? Typically no. All right. So typically no. So your answer is no. What do you mean by typically, are you, are you going to hedge on this or is it a fact that the inter vivos transfers occurred, they were depleted from an otherwise, a state, an otherwise existing estate. Now they are gone and someone who, who may have, or, you know, these are just allegations. Those are lost. They cannot be made whole as far as those transfers. Is that true? They don't have a right to those transfers as we sit here today. Okay. All right. But you would agree what you would agree, wouldn't you? That, uh, well, nevermind. I, I, I'm not sure I understand what you're saying, but I think the cases are very clear that if an inter vivos transfer is made, that that those monies, those funds, that whatever, it is gone and it cannot be recouped in a will contest. That's my thinking. I, maybe I'm wrong. No, I believe the court is correct about that. I, I have some familiarity with Ellis and does your, as does your firm. So in this case, they did timely file a will contest. That is correct. But they are the parties. Well, there wasn't a timely will contest. What makes this case unique, I think is the fact that they had a tortious two things that are Lucio's. The only case that addresses it is where the, where the plaintiffs and the tortious interference are disinherited, which raises a different, it's an altogether different issue. It's a standing issue, but this is a case where the tortious interference, they, they can't, they don't have a right to be made whole until the will contest is won. Right. And okay, let's talk about that. The will contest and the law contest have now been consolidated. That is correct. And the will contest can go forward. Correct. Before or the trial court could hold the actually could, could hear them together. But I'm not sure that I understand your position that the tortious interference or these transfers that were made, that in order for them to have standing the will has to be, probate act has to go forward. So, but what, what's preventing that from happening here in this instance, the trial court could go forward with the will contest and they have a valid will contest pending. Don't they? Yes. And if they lose the will contest, they don't have any right to any inheritance at all. Hence, they don't have a right to the funds that were allegedly tortious interfered with. It's not, and that makes it, what makes it very different from Bjork where the person was saying, I have a personal interest in those funds as a pay on death account holder, which doesn't require a will contest at all because those funds would never go into the estate. They'd always stay outside of this estate. So for these plaintiffs to have an expectancy interest, they could only have it if the court strikes or invalidates the current will and reinstates a prior will that's now it would be different again, if they had some modest interest under the current will a percentage interest under the current will, but they don't. So until the probate case is decided, they haven't yet been injured is the point. And that is the reason why we, and we would ask the trial court, but to the extent that the court does reverse or considers reversing, that's why direction to stay too, because at least right now they don't have standing. And so to answer your question, the proper procedure I think would be, so a plaintiff files, the will contest files, the interview. Your position is that the probate action has to go forward first and that, that we should decide here and now how to tell the trial court to proceed. If we reinstate. That would be because I think that would be very helpful guidance to the trial court as to how these types of claims should proceed. I think the trial court may be able to figure that out on its own, but, but you've made your recommendation. I appreciate it. Your honor. I don't mean to overstep my bounds. I don't have anything further. Any other questions? Justice Cobb? I don't have any questions. Mr. Rueda, you may take a couple of minutes for a rebuttal. Thank you. Thank you. I just was going to touch on this last point on standing. I frankly don't understand the position counsel is taking myself, especially when I have a ream of case law where, where plaintiffs have brought together will contest alongside an expectancy tort and courts have allowed them to go forward. Let's take a look at the Supreme court's decision in the estate of Hoover. Exact same scenario. The court stated, you cannot, you cannot dismiss the the the complaint because we are not sure if the, if the will contest will adequately compensate the defendant, I should say the plaintiff for all his injuries. In that case, the heart to heart, same scenario, the estate of Jezerowski. And I mentioned that case in my brief, that is nearly the exact same interest that the current appellant have in this case. And the case, and there's no issue of standing brought up by the, by the appellate court. The same thing in the estate of Rosler. No, no, no, no. What, what, Mr what the opposing counsel is stating here, it's just simply not the law. And if it was at one time, the law, it was dispensed with 40 years ago in the 1980s. That's all I have your honor. Thank you. Any other questions based on what he just said? No. Okay. All right. Very well. This, this case was well argued, well briefed. We'll take it under advisement and we will issue a decision in due course. Thank you very much and have a great day. Thank you.